**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Jeffrey FLOYD, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 29, 2007.

Filed Nov. 28, 2007.

Jeffrey Floyd, Waynesburg, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: BENDER, McCAFFERY and TAMILIA, JJ.

OPINION BY BENDER, J.:

¶ 1 Jeffrey Floyd appeals, *pro se*, from the judgment of sentence of 100 to 200 months' incarceration imposed following his conviction of aggravated assault (18 Pa.C.S. § 2702) stemming from a knife attack on his ex-wife. Appellant claims that the trial court erred by (1) refusing his pretrial motion to change his appointed counsel and by accepting Appellant's waiver of counsel thereby causing Appellant to try his own case *pro se*, and (2) by refusing to accept one of Appellant's proposed voir dire questions for the jury relating to gender bias. We affirm.

¶ 2 The trial court set forth the following recitation of the facts of this case in its opinion filed pursuant to Pa.R.A.P. 1925(a):

On July 4, 2003, Appellant assaulted his ex-wife Veronique Muse at her mother's home in the City of Philadelphia. Appellant hit and choked Ms. Muse before cutting her face in several places resulting in permanent scars over her mouth, eye, nose and cheek.

In 2003 Veronique Muse had been living in North Carolina with her boyfriend and young son. Ms. Muse had five older children living in the city of Philadelphia with her mother at 1754 West Pacific Street. One of her daughters, Safiyyah, was graduating that summer from Olney High School. Ms. Muse decided to come back to Philadelphia to attend her daughter's graduation and to spend time with her other children during the summer months. She was working two jobs to support herself for the summer.

On the morning of July 4, 2003, Ms. Muse returned to her mother's house from work and wanted to relax before going back outside to enjoy an Independence Day barbeque. As Ms. Muse sat in the living room, three of her and Appellant's children, ages fifteen and younger, were upstairs resting in an air conditioned bedroom. Ms. Muse testified that she had just called her boyfriend on the telephone when Appellant entered through the front door of the house.

It was not uncommon for Appellant to stop by the West Pacific Street residence to visit his children, but Ms. Muse described Appellant's demeanor on this occasion as agitated and aggressive.

Appellant asked to whom Ms. Muse was talking on the phone. Ms. Muse told Appellant she was on the phone with her mother. Appellant told her she was lying and attacked her. Appellant wrapped the phone cord around Ms. Muse's neck and hit her in the head with the phone. Ms. Muse struggled to breathe and pleaded with him to stop.

Ms. Muse testified that she does not remember what happened immediately after Appellant choked her, but that when she awoke she was lying on the side of her mother's coffee table and the defendant was positioned over her with his fist on her chest holding her down. Ms. Muse said she pleaded with Appellant to stop and could see him reaching for an unknown object in his pocket. Ms. Muse momentarily lost consciousness again and when she woke up she was alone on the floor of the living room calling her daughter's name. Her fifteen year old daughter Sadiyyah came running downstairs and started screaming at the sight of her mother. Sadiyyah used her cell phone to call 911 for assistance.

Trial Court Opinion (T.C.O.), 4/30/07, at 1–3.

¶ 3 Appellant proceeded to trial on November 28, 2005, with Sean Vincente, Esq., from the Defender Association of Philadelphia, having been appointed to represent Appellant. At the outset, Attorney Vincente informed the court that Appellant wished to proceed with trial *pro se.* N.T. Trial, 11/28/05, at 4. Appellant explained that he was unsatisfied with Attorney Vincente's representation and that he wanted the court to appoint different counsel. *Id.* at 21. Appellant enumerated his perceived deficiencies in Attorney Vincente's pretrial investigation and preparation. *Id.* at 15–16. The court conducted an extensive inquiry into Appellant's complaints.

*See, e.g., id.* at 31 (asking Appellant how Attorney Vincente has interfered with Appellant's attempt to establish a claim of self defense). From this discussion, and as further described below, it appears that the trial court determined that Appellant's complaints, which centered on disagreements with counsel about trial strategy, did not constitute irreconcilable differences with counsel that would warrant appointment of new counsel. Indeed, the court explained to Appellant that he did not have a right to appointed counsel of his choice. *Id.* at 22–24. The trial court further informed Appellant of, *inter alia,* the dangers of proceeding *pro se* (such as the inability to later raise ineffective assistance of counsel claims) and the benefits of representation by counsel. *Id.* at 4–24. At that point, Appellant decided to maintain representation by counsel. *Id.* at 39.

¶ 4 However, at the beginning of the second day of trial, just prior to voir dire of the jury panel, Attorney Vincente informed the court that Appellant changed his mind and again wanted to proceed *pro se.* N.T. Trial, 11/29/05, at 4. The trial court conducted an extensive formal colloquy, following which Appellant affirmed his desire to proceed *pro se. Id.* at 5–12.

¶ 5 On December 2, 2005, following several days of trial, the jury returned a verdict of guilty on the aggravated assault charge. On January 18, 2006, the trial court sentenced Appellant to 100 to 200 months' imprisonment.

¶ 6 In order to preserve Appellant's appellate rights, the Defender Association of Philadelphia filed a timely notice of appeal for Appellant on January 31, 2006. On February 14, 2006, the trial court ordered a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) and the Defender Association timely complied. However, in a motion to withdraw as counsel filed on March 9, 2006, the

Defender Association indicated that Appellant had maintained his desire to continue *pro se* representation throughout the appellate process. Motion for Withdrawal of Counsel and Appointment of New Counsel, 3/9/06, at ¶ 3. Thereafter, on March 16, 2006, the Defender Association filed a motion requesting an extension of time in which to file a Rule 1925(b) statement pending a determination regarding Appellant's waiver of counsel on direct appeal. Subsequently, on April 4, 2006, the trial court held a hearing at which time the trial court determined that Appellant's waiver of counsel on direct appeal was knowing, intelligent and voluntary as per *Commonwealth v. Grazier*, 552 Pa. 9, 713 A.2d 81 (1998). Appellant thereafter filed a *pro se* statement of matters complained of on appeal, which the trial court accepted and relied upon in composing its opinion.

¶ 7 Now, in this appeal, Appellant sets forth the following issues in the "Statement of Questions Involved" portion of his *pro se* brief:

1. Did the trial court abuse its discretion and commit an error of law in denying [A]ppellant['s] pre-trial request for change in trial counsel due to irreconcilable differences and acceptance of [A]ppellant['s] involuntary waiver of counsel?

2. Did [the] trial court abuse its discretion in rejecting [A]ppellant['s] one voir dire question probative to disqualifying jurors with a fixed bias? Question was[,] ["]What is prospective jurors['] belief concerning a man protecting himself from a woman, or do you believe that only a woman can act in self-defense?["].

Appellant's brief at 4 (trial court "answers" omitted).

¶ 8 With regard to the first issue, we note, as did the trial court, that "the right to appointed counsel does not include the right to counsel of the defendant's choice." *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 709 (1998). Moreover,

[w]hether to grant a defendant's petition to replace court appointed counsel is a decision which is left to the sound discretion of the trial court. As a general rule, however, a defendant must show irreconcilable differences between himself and his court appointed counsel before a trial court will be reversed for abuse of discretion in refusing to appoint new counsel.

*Commonwealth v. Grazier*, 391 Pa.Super. 202, 570 A.2d 1054, 1055 (1990) (citations omitted). *See also* Pa.R.Crim.P. Rule 122(C) ("A motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons."). In some cases, we have concluded that "substantial reasons" or "irreconcilable differences" warranting appointment of new counsel are not established where the defendant merely alleges a strained relationship with counsel, where there is a difference of opinion in trial strategy, where the defendant lacks confidence in counsel's ability, or where there is brevity of pretrial communications. *Grazier*, 570 A.2d at 1055–56 (collecting cases).

¶ 9 For example, in *Commonwealth v. Bell*, 328 Pa.Super. 35, 476 A.2d 439, 445 (1984), the defendant wrote several letters to the trial court prior to trial in which he complained about his appointed counsel. The defendant again raised his complaints at a pretrial hearing in which he alleged that his appointed counsel was "incompetent, unprepared and had not consulted with him often enough" and he indicated that he lacked confidence in his counsel. *Id.* The defendant also asserted that his counsel failed to timely file pretrial motions and that he failed to consult with the defendant prior to discussing a potential

plea bargain with the district attorney. *Id.* The defendant argued that there was a "divergence between what he and counsel thought was the best way to proceed" because counsel "desired a guilty plea" whereas the defendant wanted to proceed to trial. *Id.* Nevertheless, at the pretrial hearing, the trial court conducted an inquiry into the defendant's complaints, and found that counsel was competent in his representation of the defendant. For example, the trial court credited counsel's representation that the reason that pretrial motions were delayed was because of a delay in the Commonwealth providing its discovery materials and that the parties agreed to the delayed filing. *Id.* We concluded that, under these circumstances, the trial court did not abuse its discretion in refusing to appoint new counsel. *Id.*

¶ 10 Similarly, in *Commonwealth v. Chew*, 338 Pa.Super. 472, 487 A.2d 1379, 1383 (1985), the defendant became dissatisfied with his appointed counsel due to a difference of opinion in trial strategy and what the defendant perceived as counsel's inadequate preparation for trial. The defendant continued to be dissatisfied with counsel and even spit in counsel's face on the first day of trial. *Id.* After doing so, the defendant requested appointment of new counsel. *Id.* Nevertheless, after the trial court inquired of counsel regarding his preparation and familiarity with the case, the trial court concluded that counsel was both able and willing to continue to defend the charges against the defendant. *Id.* On appeal, we concluded that the trial court did not abuse its discretion in refusing to appoint new counsel. *Id.* See also *Commonwealth v. Spotz*, 562 Pa. 498, 756 A.2d 1139, 1149–50 (2000) (concluding appointment of new counsel not warranted where potential conflict of interest existed in that appointed counsel warned court, prior to trial, of defendant's threat against Commonwealth witness and of potential plan of defendant to stab counsel with a pencil during trial to obtain a mistrial, but counsel nevertheless indicated they could still competently and zealously represent defendant and where appellant's attempt to create a "conflict" was of his own doing); *Commonwealth v. Neal*, 387 Pa.Super. 165, 563 A.2d 1236, 1239–43 (1989) (concluding defendant failed to establish irreconcilable differences by alleging counsel met with him infrequently and failed to file pretrial motions for discovery and suppression where counsel explained, to the contrary, that she had extensive conversations with defendant and was thoroughly prepared for trial; however, on appeal, we found abuse of discretion where trial court, after properly finding lack of irreconcilable differences, conducted inadequate waiver colloquy to ensure that defendant's decision to proceed *pro se* was intelligent, knowing, and voluntary); *Commonwealth v. Knapp*, 374 Pa.Super. 160, 542 A.2d 546, 549 (1988) (indicating that counsel may be rejected only for "good cause shown," and that appellant failed to establish good cause by merely alleging that his relationship with appointed counsel was "strained"); *Commonwealth v. Johnson*, 309 Pa.Super. 117, 454 A.2d 1111, 1115 (1982) (concluding defendant not entitled to new counsel where defendant merely alleged that he lacked confidence in appointed counsel and did not like counsel's attitude or the manner in which counsel spoke to defendant); *Commonwealth v. Weakland*, 273 Pa.Super. 361, 417 A.2d 690, 692 n. 2 (1979) (finding no irreconcilable differences to warrant appointment of new counsel where defendant alleged brevity of pretrial communications with current appointed counsel and alleged that counsel consistently advised him to plead guilty).

¶ 11 On the other hand, in *Commonwealth v. Tyler*, 468 Pa. 193, 360 A.2d 617 (1976), a case that Appellant relies upon

heavily, our Supreme Court concluded that the trial court abused its discretion by refusing to appoint new counsel where the defendant established irreconcilable differences with his appointed counsel regarding the "manner in which the trial of his case should be conducted." *Id.* at 618. Upon the trial court's inquiry, appointed counsel acknowledged that there was a difference of opinion, but he could not provide any further explanation due to the attorney-client privilege, *id.* at 618–619, thereby essentially preventing the court from inquiring into the underpinnings of the defendant's complaints. Additionally, after the trial court refused the defendant's motion for appointment of new counsel, the defendant decided to proceed *pro se,* but the trial court failed to conduct the colloquy critical to ensure a knowing, intelligent, and voluntary waiver of counsel. *Id.* at 620. Under such circumstances, the supreme court remanded for a new trial. *Id. See also Commonwealth v. Smith,* 426 Pa.Super. 144, 626 A.2d 614, 616–619 (1993) (concluding that where counsel sought to withdraw representation due to irreconcilable differences and defendant agreed, trial court abused its discretion by allowing defendant to proceed *pro se* without conducting colloquy to ensure that waiver of counsel was knowing, intelligent, and voluntary).

¶ 12 Herein, Appellant argues that Attorney Vincente failed to "advocate [A]ppellant['s] assertion of self-defense to a jury" and that "[p]rior to trial[,][A]ppellant complained to the trial court, via two letters, that there were serious and substantial irreconcilable differences between [A]ppellant and [Attorney] Vincente concerning the entire defense...." Appellant's brief at 20. In support of his claim of irreconcilable differences, Appellant sets forth the following allegations: (1) that Attorney Vincente failed to investigate Appellant's allegation that Ms. Muse stole a television from Rent–A–Center in order to purchase crack cocaine, which, according to Appellant, motivated her attack on Appellant on July 4, 2003, *id.* at 15, 31, 42; (2) that Attorney Vincente failed to procure photographs of the house where the July 4, 2003 incident occurred in order to establish that Appellant could not safely escape the scene, which Appellant claims would have substantiated his claim of self-defense, *id.* at 21, 42–43; (3) that Attorney Vincente lied about obtaining Ms. Muse's hospital records from treatment she received on August 27, 1997 for a cut on her hand allegedly caused by *her* "viciously [sic] attack" on Appellant during an argument, in order to establish her "violent propensities[,]" *id.* at 21–22, 43–44; (4) that Attorney Vincente refused to inform him of the Commonwealth witnesses that would testify, *id.* at 24, 43; (5) that Attorney Vincente manipulated tax records that prohibited Appellant from impeaching Ms. Muse on her statement to authorities that she owned the house where the July 4, 2003 attack occurred, when, actually, the house had been foreclosed upon, *id.* at 44–45; and (6) that Attorney Vincente refused to return to Appellant a letter that Appellant wrote to Philadelphia detectives in which he "confessed his innocence" and explained the details of how the victim was the aggressor in the July 4, 2003 incident, and which, according to Appellant, would allow him to cross examine Ms. Muse on her motives for stabbing Appellant in the hand during that incident, *id.* at 24. Appellant contends that these complaints about Attorney Vincente's representation constitute substantial irreconcilable differences and that the trial court erred by refusing to appoint new counsel, thereby forcing Appellant to proceed *pro se. Id.* at 25–26, 46–47. To the contrary, Attorney Vincente indicated that he and Appellant "just [had] disagreement as to how the

case should be tried. That's really it." N.T. Trial, 11/28/05, at 29.

¶ 13 We conclude that the trial court did not abuse its discretion in refusing Appellant's request for new counsel. Indeed, the circumstances presented in the instant case are more akin to those in *Bell* and *Chew* and less like those in the cases relied upon by Appellant, such as *Tyler*. Like the defendants in *Bell* and *Chew*, Appellant disagreed with Attorney Vincente's trial strategy, but the trial court was able to conduct an extensive inquiry with both Appellant and Attorney Vincente as to the underpinnings of Appellant's complaints regarding his perceived deficits in Attorney Vincente's preparation and thereafter determined that these perceived deficits did not rise to the level of irreconcilable differences. N.T., 11/28/05, at 15–40. In *Tyler*, a case relied upon by Appellant, the trial court did not have a similar opportunity due to the attorney-client privilege.[1]

¶ 14 More specifically, Attorney Vincente explained that he had subpoenaed the medical records that Appellant requested, but that those records did not support Appellant's claim of self-defense. *Id.* at 19, 28. Rather, the medical records that Attorney Vincente did procure only supported the Commonwealth's position that Appellant was violent with Ms. Muse in the past. *Id.* at 28. By way of further example, Attorney Vincente expressed his belief that the Rent–A–Center issue, and other issues that Appellant sought to be investigated, were "very collateral issues of impeachment that cannot be substantiated." *Id.* at 28. Attorney Vincente also represented to the court that he informed Appellant of his right to testify to establish his claim of self defense. *Id.* at 29. Attorney Vincente also described, as untenable,

Appellant's desire to subpoena another trial judge who presided over Appellant's 1998 guilty plea to assault on the same victim in order to establish that his plea was coerced, even though Appellant never challenged the validity of that plea in the past. *Id.* at 35–37; N.T., 11/29/05, at 30–33. Moreover, despite Appellant's claims to the contrary and like counsel in *Spotz*, Attorney Vincente represented to the court that he was fully prepared and ready to proceed with Appellant's trial. N.T., 11/28/05, at 5.

¶ 15 Although Appellant claimed that Attorney Vincente was lying to the court about his preparation, the court apparently credited Attorney Vincente's representations and, in the end, concluded that the record did not support a finding of irreconcilable differences that would warrant appointment of new counsel. *See Commonwealth v. Wells*, 916 A.2d 1192, 1195 (Pa.Super.2007) ("[W]e are bound by the factual and the credibility determinations of the trial court which have support in the record[.]"). The trial court's determinations in this case are supported by the record and, accordingly, we find no abuse of discretion in the trial court's refusal to appoint new counsel.

¶ 16 Additionally, after refusing Appellant's motion for new counsel and informing Appellant of his right to proceed *pro se*, the trial court conducted an extensive colloquy to ensure that Appellant's waiver of counsel was knowing, intelligent, and voluntary. *Cf. Tyler*, 360 A.2d at 618–19 (where trial court could not inquire into basis of defendant's complaints about counsel's trial strategy due to attorney-client privilege, and where trial court's waiver colloquy was woefully inadequate).

---

1. As further described below, the instant case is also unlike *Tyler* because the trial court in *Tyler* did not conduct an adequate colloquy to ensure that the defendant's waiver of counsel was knowing, intelligent, and voluntary. *Tyler*, 360 A.2d at 620.

¶ 17 In *Commonwealth v. Houtz*, 856 A.2d 119, 122 (Pa.Super.2004), we stated as follows:

"Both the right to counsel and the right to self-representation are guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section Nine of the Pennsylvania Constitution." *Commonwealth v. Payson*, 723 A.2d 695, 699–700 (Pa.Super.1999). "Deprivation of these rights can never be harmless." *Id.* The constitutional right to counsel may be waived, but this waiver is valid only "if made with knowledge and intelligence." *Id.* at 700 (citing *Commonwealth v. Carey*, 235 Pa.Super. 366, 340 A.2d 509 (1975)).

"In order to make a knowing and intelligent waiver, the individual must be aware of both the nature of the right and the risks and consequences of forfeiting it." *Payson, supra* at 700 (citing *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326 (1995)). Moreover,

the presumption must always be against the waiver of a constitutional right. Nor can waiver be presumed where the record is silent. The record must show, or there must be an allegation and evidence which shows, that an accused was offered counsel but intelligently and understandingly rejected the offer.

*Payson, supra* at 700 (quoting *Commonwealth v. Monica*, 528 Pa. 266, 273, 597 A.2d 600, 603 (1991)). Thus, for this Court "to uphold such a waiver, the record must clearly demonstrate an informed relinquishment of a known right." *Payson, supra* at 700 (citing *Commonwealth v. Hill*, 492 Pa. 100, 422 A.2d 491 (1980)).

The comment to Pa.R.Crim.P. 121, which governs waiver of counsel, provides as follows:

In the state of the law existing at the time this rule was drafted, it is difficult to formulate a comprehensive list of questions which must be asked of the defendant in determining whether the defendant's tendered waiver of counsel is knowing, intelligent, and voluntary. Court decisions contain broad language in referring to the areas and matters to be encompassed in determining whether the defendant understands the full impact and consequences of his waiver of the right to counsel, but is nevertheless willing to waive that right. It is recommended, however, that at a minimum, the judge or issuing authority ask questions to elicit the following information:

(1) That the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent.

(2) That the defendant understands the nature of the charges against the defendant and the elements of each of those charges.

(3) That the defendant is aware of the permissible range of sentences and/or fines for the offenses charged.

(4) That the defendant understands that if he or she waives the right to counsel, the defendant will still be [b]ound by all the normal rules of procedure and that counsel would be familiar with these rules.

(5) That the defendant understands that there are possible defenses to these charges which counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently.

(6) That the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised

by the defendant, these errors may be lost permanently.

This area is presently one of some flux in the law; therefore, it is intended that what is set out above is only a beginning and, depending on the circumstances of the particular case, may not necessarily be sufficient to assure a valid waiver of counsel.

Pa.R.Crim.P. 121 cmt.

¶ 18 The waiver colloquy conducted by the trial court in the instant case was sufficient to establish that Appellant's decision to waive counsel and proceed *pro se* was knowing, intelligent, and voluntary. The court informed Appellant of his right to counsel and explained to Appellant that the charge of aggravated assault had been graded as a first degree felony with a maximum potential sentence of up to twenty years imprisonment and a maximum potential fine of up to $25,000. N.T., 11/28/05, at 9–10; N.T., 11/29/05, at 5. The court explained what it meant to proceed *pro se*, that Appellant would still be bound by court rules and procedure if he elected to proceed *pro se*, and that Attorney Vincente would be available for consultation purposes as stand-by counsel. N.T., 11/28/05, at 10–11; N.T., 11/29/05, at 6, 9. The court explained the advantages of having representation by counsel and the disadvantages to proceeding *pro se*, including the fact that Appellant would later be unable to raise ineffectiveness of counsel claims. N.T., 11/28/05, at 12, 20, 23–25, 41–43; N.T., 11/29/05, at 6, 16–17. Appellant agreed that his decision to forego counsel was voluntary. N.T., 11/29/05, at 7. Indeed, on a couple of occasions during the pretrial discussion on this matter, Appellant interrupted Attorney Vincente, insisted on speaking for himself, and emphasized that he was acting *pro se*. *Id.* at 12, 26. Finally, the court also confirmed that Appellant was not under the influence of any alcohol or drug, that Appellant did not have mental or emotional problems, and the court further confirmed Appellant's age, educational level, and literacy in English. *Id.* at 8. Accordingly, given this extensive colloquy, we find no merit to Appellant's argument that his waiver of counsel was involuntarily tendered.

¶ 19 Next, Appellant argues that the trial court abused its discretion by rejecting Appellant's proposed voir dire question about prospective jurors' "feelings concerning a man protecting himself from a woman" or "do they believe that only a woman could act in self defense[.]" N.T., 11/28/05, at 50. The trial court explained that it rejected this question as an improper attempt to disclose the prospective jurors' "present opinion or what [their] opinion or decision [would be] under certain facts[.]" T.C.O. at 8. We conclude initially that the trial court did not abuse its discretion.

¶ 20 In *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831, 849 (2003), our Supreme Court stated:

The scope of *voir dire* rests in the sound discretion of the trial court, whose decision will not be reversed on appeal absent palpable error. *Commonwealth v. Bridges*, 563 Pa. 1, 757 A.2d 859, 872 (2000). The purpose of *voir dire* is solely to ensure the empaneling of a competent, fair, impartial, and unprejudiced jury capable of following the instructions of the trial court. *Id.* Neither counsel for the defendant nor the Commonwealth should be permitted to ask direct or hypothetical questions designed to disclose what a juror's present impression or opinion as to what his decision will likely be under certain facts which may be developed in the trial of the case. *See Commonwealth v. Carson*, 559 Pa. 460, 741 A.2d 686, 698 (1999). "*Voir dire* is not to be utilized as a tool

for the attorneys to ascertain the effectiveness of potential trial strategies." *Commonwealth v. Paolello,* 542 Pa. 47, 665 A.2d 439, 451 (1995).

The Court explained that the voir dire questions proposed by the defendant in that case were properly disallowed because they were "intended to elicit what the jurors' reactions might be when and if appellant presented certain specific types of mitigating evidence." *Id.* The Court further stated:

> The questions were simply not relevant in seeking to determine whether the jurors would be competent, fair, impartial and unprejudiced. Rather, the queries at issue sought to gauge the efficacy of potential mitigation strategies. Moreover, in the face of these inappropriate questions, the trial court asked appropriate general questions which revealed that the jurors in question would consider all the evidence, both aggravating and mitigating, and follow the court's instructions. Appellant had no objection to that appropriate course of questioning.

*Id.* at 849.

¶ 21 Appellant's proposed question was properly rejected by the trial court as an attempt on Appellant's part to test the potential efficacy of his self defense claim. Moreover, the trial court's voir dire was sufficient to ensure "the empaneling of a competent, fair, impartial, and unprejudiced jury capable of following the instructions of the trial court." *Id.* at 849 (citation omitted). For example, after explaining the allegations in this case, N.T., 11/29/05, at 44, the trial court questioned the potential jurors on whether they have heard of the incident in this case, whether they knew any of the parties or witnesses, whether they had a fixed opinion with regard to Appellant's guilt, whether there was any reason they could not act as a fair juror, and whether any potential juror would have difficulty following the court's instructions, including instructions pertaining to the Commonwealth's burden of establishing guilt beyond a reasonable doubt. *Id.* at 48–52. By way of further example, the trial court questioned individual jurors on their ability to remain uninfluenced by previous experiences, such as being a victim of crime or witness to a crime themselves, or knowing someone who was a victim of crime. *Id.* at 54–55, 58. The court also asked jurors specifically if they knew anyone who was a victim of domestic violence. *Id.* at 56, 59–60. Finally, the court asked individual jurors if they could act fairly and impartially. *Id.* Our review of the voir dire conducted in this case results in the conclusion that the trial court asked sufficient questions to ensure the impartiality of the jury panel.

¶ 22 Finally, we are in receipt of a motion from Appellant seeking to strike the Commonwealth's brief in this appeal. This motion is denied.

¶ 23 Judgment of sentence affirmed. Motion to strike Commonwealth's brief denied.