J-S42022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ISAAC NEWTON RAMOS-PEREZ | : | |
| | : | |
| Appellant | : | No. 381 MDA 2025 |

Appeal from the Judgment of Sentence Entered October 28, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0001877-2023

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ISAAC NEWTON RAMOS-PEREZ | : | |
| | : | |
| Appellant | : | No. 382 MDA 2025 |

Appeal from the Judgment of Sentence Entered October 28, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0001878-2023

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ISAAC NEWTON RAMOS PEREZ | : | |
| | : | |
| Appellant | : | No. 383 MDA 2025 |

Appeal from the Judgment of Sentence Entered October 28, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0001879-2023

BEFORE:  OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY KING, J.:                    **FILED: MARCH 3, 2026**

Appellant, Isaac Newton Ramos-Perez, appeals from the judgment of sentence entered in the York County Court of Common Pleas, following his jury trial convictions for one count each of terroristic threats, harassment, stalking, and person not to possess firearms; two counts each of attempted murder and aggravated assault; and three counts each of burglary and simple assault.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. The Commonwealth charged Appellant with the aforementioned offenses across three dockets in connection with three altercations Appellant had with his prior paramour, Yocasta Guzman-Belatran ("Victim"), and her children. Assistant public defender, Anthony Miley, Esquire, was appointed to represent Appellant on all three matters and entered his appearance on April 18, 2023. The trial court consolidated the cases on April 24, 2023.  While represented by Attorney Miley, Appellant sought and was granted four continuances, to allow additional time to review discovery and discuss plea offers.

At a pretrial conference on March 20, 2024, Appellant informed the court that he was unhappy with Attorney Miley's representation because he felt that Attorney Miley had not spent sufficient time meeting with Appellant and failed to consider relevant evidence Appellant wished to put forth.  Appellant requested that the court appoint new counsel.  Attorney Miley represented to

---

[1] 18 Pa.C.S.A. §§ 2706(a), 2709(a), 2709.1(a), 6105(a), 901(a), 2702(a), 3502(a), and 2701(a), respectively.

the court that he met with Appellant with an interpreter, reviewed the plea offer and all available discovery, and had been attempting to pursue all relevant additional information Appellant sought. The court informed Appellant that it would not appoint new counsel, but Appellant was free to hire private counsel of his choice.

Thereafter, Appellant retained private counsel. William Graff, Esquire, entered his appearance on Appellant's behalf on May 29, 2024. At a pretrial conference on June 25, 2024, Attorney Graff reported to the court that he reviewed all the discovery in Appellant's case and was ready to proceed to trial. On July 10, 2024, Appellant sought and was granted a fifth continuance because Attorney Graff had a medical emergency.

At a pretrial conference on July 31, 2024, after the case had been listed for trial, Appellant informed the court that he was dissatisfied with Attorney Graff's representation. Specifically, Appellant reported to the court that Attorney Graff had only visited him once and they only spoke about payment for his services. In response, Attorney Graff stated that he reviewed the discovery in Appellant's case and felt prepared to proceed to trial. Attorney Graff further represented to the court that he had visited Appellant "a couple of times" and had listened to Appellant's version of events. (*See* N.T. Pretrial Conference, 7/31/24, at 4). Attorney Graff further stated that Appellant had offered "no reasonable explanation" that would prompt Attorney Graff to pursue further evidence and opined that Appellant was merely "waiting until the last minute trying to drag it out." (*Id.*) The court credited Attorney Graff's

statements and denied Appellant's request for additional time to seek new counsel. The court scheduled trial to commence on August 5, 2024.

On August 5, 2024, immediately prior to jury selection, Attorney Graff reported to the court that he had spoken with Appellant multiple times since the pretrial conference and Appellant had consistently stated that he had fired Attorney Graff. Attorney Graff informed Appellant that his options at this stage of the case were to proceed *pro se*, retain new counsel to be available by the trial date, or continue with Attorney Graff's representation. The court asked Appellant to elaborate on his concerns regarding Attorney Graff. Appellant told the court that Attorney Graff had been disrespectful to him, called him stupid, and ordered him to pay for Attorney Graff's services. He further reported that Attorney Graff failed to pursue three witnesses that Appellant wished to call at trial. Attorney Graff responded that although Appellant claimed to have witnesses, he failed to provide any names of witnesses that he wished to call when asked. Attorney Graff further stated that he could still pursue any such witnesses in time for trial if Appellant provided their names and contact information. The court asked Appellant whether he had provided Attorney Graff with the names or contact information for any witnesses. Appellant did not respond directly to the question but again reiterated that he did not feel that Attorney Graff spent sufficient time meeting with him and listening to the information he had to provide.

Appellant further claimed that Attorney Graff had threatened him. The court asked Appellant for further details. In response, Appellant stated that

Attorney Graff turned off the light and left the room when Appellant told him that he did not want Attorney Graff to continue to represent him. The court inquired again whether Attorney Graff was merely disrespectful to Appellant or had threatened him. Appellant indicated that he viewed Attorney Graff's failure to spend sufficient time discussing his case as a threat.

Thereafter, Appellant stated that he had retained new counsel. When the court asked Appellant who his new attorney was, Appellant responded that it was "someone from Ferros office." (N.T. Trial, 8/5/24, at 11). He further stated that his family friend from the Dominican Republic was sending money to their office. Appellant stated that his new counsel was not present at trial because Appellant was unaware that trial was scheduled to commence that day. The court noted that Appellant was present at the pretrial conference when trial was scheduled for the present date. The court denied Appellant's request for a continuance. The court further informed Appellant that he could elect to proceed *pro se* with standby counsel or continue with Attorney Graff's representation until such time as new counsel entered his or her appearance on Appellant's behalf. Appellant did not elect to proceed *pro se*. After jury selection was completed and prior to the commencement of trial, the ADA informed the court that he reached out to the Ferro Law Firm and inquired whether any attorney at the firm was representing Appellant. The Ferro Law firm informed the ADA that they had no knowledge of Appellant, did not have his name in their system, and had not accepted any payments from him.

Trial commenced that same afternoon. Briefly,[2] Victim testified that she and Appellant were previously in a romantic relationship. On December 4, 2022, approximately one month after Victim had broken up with Appellant, he entered Victim's home, uninvited, while Victim and her daughter were present. He pulled out a knife and threatened to kill Victim, her children and her mother. After a brief struggle, Appellant let go of the knife and left. The Commonwealth presented security video footage of this altercation to the jury. Victim reported this incident to the police.

On December 19, 2022, Appellant pushed his way into Victim's residence while she was there alone. Appellant pointed a gun at Victim and threatened to kill Victim, her children and her mother if she did not withdraw the complaint she had made to the police regarding the prior incident. Appellant then let Victim leave the residence. Victim, again, reported this incident to the police. On December 23, 2022, Appellant entered Victim's residence again while Victim and her two children were home. Appellant grabbed Victim, pointed a gun at her side, and attempted to take her down to the basement. At this point, Victim's son came down the stairs. When Appellant saw that Victim's son was calling the police, Appellant shot Victim and her son multiple times, resulting in serious injuries. Victim's daughter and son testified and corroborated Victim's account.

Appellant testified in his own defense. Appellant stated that during the

---

[2] The details of the evidence set forth at trial are not relevant to the issues on appeal. Therefore, we only summarize the evidence here.

first encounter, Victim pulled out the knife and he struggled with her to recover the knife. Regarding the second incident, Appellant denied that he entered Victim's home with a gun. He testified that Victim invited him over and they had a conversation about their relationship without incident. Appellant further testified that Victim invited him over to her house on the day of the shooting. While he was there, a masked man entered the house, struck Victim in the back of the head, and shot Victim and her son.

At the conclusion of the evidence, the jury found Appellant guilty of all charges. On October 28, 2024, the court sentenced Appellant to an aggregate term of 60½ to 121 years' incarceration. After obtaining new counsel, Appellant filed a timely post-sentence motion on November 7, 2024, which the court denied on February 13, 2025. On Monday, March 17, 2025, Appellant filed timely notices of appeal at each docket. The next day, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on April 8, 2025. This Court consolidated the appeals *sua sponte* on April 8, 2025.

Appellant raises the following issue for our review:

> Did the [trial] court abuse its discretion in denying [Appellant's] requests for a continuance to obtain new counsel where the court conducted little in the way of an inquiry into the matter, there was no pressing need to go to trial and good reason to grant a continuance, and the refusal to continue trial denied [Appellant] the opportunity to obtain counsel of his choice and resulted in a trial with numerous bizarre and inappropriate exchanges in the presence of the jury?

(Appellant's Brief at 4).

Appellant argues that the court failed to conduct a proper inquiry into Appellant's claims that Attorney Graff was not adequately representing his interests. Appellant asserts that he sufficiently demonstrated that there were irreconcilable differences between himself and Attorney Graff. Specifically, Appellant contends that Attorney Graff failed to meet with him, spoke disrespectfully to him, did not pursue witnesses Appellant wished to present, and threatened him. Appellant further argues that the five prior continuances in his case were granted at an earlier stage in the proceedings for legitimate purposes and should not be viewed as evidence of a delay tactic on Appellant's part. Appellant emphasizes that the Commonwealth did not assert that it would be prejudiced by another continuance. As such, Appellant suggests that the court summarily denied Appellant's continuance requests based on an arbitrary insistence upon judicial expeditiousness despite there being evidence of a legitimate reason for delay. Appellant concludes that the court abused its discretion in denying his pre-trial and day-of-trial requests for a continuance, effectively depriving him of his Sixth Amendment right to counsel of his choice, and this Court must grant relief. We disagree.

"The matter of granting or denying a continuance is within the discretion of the trial court." *Commonwealth v. Sandusky*, 77 A.3d 663, 671 (Pa.Super. 2013). "[T]rial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this

burden counsels against continuances except for compelling reasons." *Id.* (internal citation omitted). "Accordingly, a trial court exceeds its constitutional authority only when it exercises its discretion to deny a continuance on the basis of an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Id.* at 671-72 (internal citation and quotation marks omitted).

With respect to the right to counsel, the Supreme Court of Pennsylvania has stated:

> The right to counsel is guaranteed by both the Sixth Amendment to the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution. In addition to guaranteeing representation of the indigent, these constitutional rights entitle an accused "to choose at his own cost and expense any lawyer he may desire." *Commonwealth v. Novak*, 395 Pa. 199, 213, 150 A.2d 102, 109, *cert. denied,* 361 U.S. 882, 80 S.Ct. 152, 4 L.Ed.2d 118 (1959). The right to "counsel of one's own choosing is particularly significant because an individual facing criminal sanctions should have great confidence in his attorney." *Moore v. Jamieson,* 451 Pa. 299, 307-08, 306 A.2d 283, 288 (1973).
>
> We have held, however, that the constitutional right to counsel of one's choice is not absolute. *Commonwealth v. Robinson,* 468 Pa. 575, 592–93 & n. 13, 364 A.2d 665, 674 & n. 13 (1976). Rather, "the right of the accused to choose his own counsel, as well as the lawyer's right to choose his clients, must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice." *Id.* at 592, 364 A.2d at 674 (internal quotations omitted). Thus, this Court has explained that while defendants are entitled to choose their own counsel, they should not be permitted to unreasonably "clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice." *Commonwealth v. Baines,* 480 Pa. 26, 30, 389 A.2d 68,

70 (1978). At the same time, however, we have explained
that "'a myopic insistence upon expeditiousness in the face
of a justifiable request for delay can render the right to
defend with counsel an empty formality.'" ***Robinson***, 468
Pa. at 593-94, 364 A.2d at 675 (quoting ***Ungar v. Sarafite***,
376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)).

***Commonwealth v. Prysock***, 972 A.2d 539, 541-42 (Pa.Super. 2009)

(quoting ***Commonwealth v. McAleer***, 561 Pa. 129, 136-37, 748 A.2d 670,

673-74 (2000)).

A defendant's right to choose private counsel "must be exercised at a

reasonable time and in a reasonable manner." ***Commonwealth v. Rucker***,

563 Pa. 347, 761 A.2d 541, 542-43 (2000) (citation and emphasis omitted).

In evaluating a trial court's ruling on a motion for continuance to obtain private

representation, this Court must consider the following factors:

> (1) whether the court conducted an extensive inquiry into
> the underlying causes of defendant's dissatisfaction with
> current counsel; (2) whether the defendant's dissatisfaction
> with current counsel constituted irreconcilable differences;
> (3) the number of prior continuances; (4) the timing of the
> motion for continuance; (5) whether private counsel had
> actually been retained; and (6) the readiness of private
> counsel to proceed in a reasonable amount of time.

***Commonwealth v. Broitman***, 217 A.3d 297, 300 (Pa.Super. 2019).

Irreconcilable differences must be more than simply a "strained" relationship

with counsel, lack of faith in counsel, a difference of opinion regarding trial

strategy or a brevity of pretrial communications. ***Commonwealth v. Floyd***,

937 A.2d 494, 497-98, 500 (Pa.Super. 2007). "Where … the defendant and

his counsel offer competing contentions as to the readiness of defense counsel

for trial, it is for the trial court to decide whose portrayal of defense counsel's

degree of preparedness is more accurate." ***Commonwealth v. Cook***, 597 Pa. 572, 952 A.2d 594, 618 (2008).

Instantly, the trial court evaluated Appellant's concerns about Attorney Graff and determined that they did not amount to irreconcilable differences. Contrary to Appellant's claim that the court did not conduct a proper inquiry into Appellant's assertions, the court addressed each of Appellant's objections to Attorney Graff. At the pretrial conference on July 31, 2024, the court allowed Appellant to state his reasons for wanting new counsel and Appellant reported that Attorney Graff had not adequately spent time meeting with him. Attorney Graff refuted Appellant's claim, asserting that he had met with Appellant several times and felt prepared to proceed to trial. The court credited Attorney Graff's statement. ***See Cook, supra***.

Similarly, on the morning of trial, the court inquired into each of the complaints Appellant raised against Attorney Graff. Appellant asserted that Attorney Graff had not sought certain witnesses that Appellant wished to call at trial. Again, Attorney Graff refuted Appellant's claim and stated that Appellant had failed to provide names and contact information for any such witnesses. The court asked Appellant whether he had provided that information to Attorney Graff. Appellant did not respond to the court's inquiry directly or provide the names of any witnesses he wished to call. Appellant subsequently reported that Attorney Graff had threatened him, and the court probed Appellant for further details. In response, Appellant reported an incident where Attorney Graff left the room and turned off the light while they

were meeting. The court acknowledged that Attorney Graff's conduct may have been disrespectful but found that it was not threatening. The court further determined that any strain in Appellant and Attorney Graff's relationship did not amount to irreconcilable differences, particularly in light of Attorney Graff's consistent representation that he was prepared to proceed to trial. *See Floyd, supra*.

Additionally, the court noted that Appellant had been granted five prior continuances in this matter, including one continuance after he had retained Attorney Graff as counsel. Regardless of the reasons for these continuances, Appellant had more than adequate time to retain alternate counsel if he was dissatisfied with Attorney Graff's representation. Nevertheless, Appellant waited until only a few days before trial was scheduled to begin to lodge any grievances against Attorney Graff. *See Rucker, supra*. The court further found no merit to Appellant's claim on the morning of trial that he had retained new counsel. No other counsel had entered his or her appearance on Appellant's behalf or appeared before the court on the day of trial. Appellant could not tell the court the name of his new counsel but merely stated that it was "someone from Ferros office." The ADA subsequently called and confirmed that Appellant was not represented by anyone at the Ferro Law firm. On this record, we cannot say that the court abused its discretion in denying Appellant's requests for a continuance to obtain alternate counsel. *See Broitman, supra*; *Sandusky, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/03/2026