J-S47045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NISHY JOHNSON | : | |
| | : | |
| Appellant | : | No. 1164 EDA 2024 |

Appeal from the Judgment of Sentence Entered March 21, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009655-2021

BEFORE: PANELLA, P.J.E., OLSON, J., and BECK, J.

MEMORANDUM BY BECK, J.: **FILED APRIL 13, 2026**

Nishy Johnson ("Johnson") appeals from the judgment of sentence imposed by the Philadelphia County Court of Common Pleas ("trial court") following his convictions of third-degree murder, conspiracy to commit murder, possession of an instrument of crime ("PIC"), possessing a firearm without a license, and carrying firearms on public streets or public property in Philadelphia.[1] Johnson's counsel, Attorney Todd M. Mosser ("Attorney Mosser"), seeks to withdraw from representation pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009). Upon review, we grant Attorney Mosser's petition to withdraw and affirm the judgment of sentence.

_____

[1] 18 Pa.C.S. §§ 2502(c), 903(a)(1), 907(a), 6106, 6108.

The trial court set forth the relevant facts and procedural history:

On the evening of July 13, 2021, Zykeem Thomas [("Thomas")] was shot and killed while riding a bicycle in the area of 801 North 10th Street in Philadelphia, Pennsylvania. Civilians in the area who had witnessed the shooting drove [] Thomas to Thomas Jefferson University Hospital, where he was pronounced dead on arrival. Detective Francesco Campbell, the homicide detective assigned to investigate the murder of [] Thomas, later arrived at the scene, recovered video surveillance footage from the area, observed a distinct Toyota Camry in the vicinity of the shooting, and disseminated a patrol alert for the vehicle.

In response to his patrol alert, Detective Campbell received report that the vehicle seen in the footage had been found at the 1600 block of Cadwallader Street. Using additional surveillance footage from cameras affixed to various buildings along the vehicle's travel route, Detective Campbell tracked the vehicle and its three [] occupants from Cadwallader Street to the Fishtown Flats Apartment Complex, located on the 1400 block of Germantown Avenue. There, Detective Campbell recovered additional video surveillance footage from the interior of the apartment complex, and, upon reviewing the footage, observed one [] of the suspects pull his mask down and expose his face. Detective Campbell subsequently disseminated a second patrol alert which included a still of this suspect's face from the additional footage.

Officer Gregory Neal — a criminal intelligence officer who testified to having familiarity with [Johnson] through physical encounters and [Johnson]'s social media presence — responded to Detective Campbell's second patrol alert and immediately identified [Johnson] from the surveillance footage. Thereafter, Detective Campbell submitted the evidence obtained from his investigation to the fugitive squad, who then issued an arrest warrant for [Johnson]. On August 25, 2021, Officer Kevin Judge, along with other members of the Fugitive Squad and the U.S. Marshals, arrested [Johnson] at 4200 Woodhaven Road, Apartment 110.

At [Johnson]'s trial, Officer Christine Hilbert of the Homicide Unit testified to executing a search warrant at this apartment and recovering a 9mm handgun, which was loaded with one [] live 9mm cartridge in the chamber and fifteen [] live 9mm cartridges

in the magazine, as well as a box of Remmington .45 caliber ammunition. The Commonwealth and [Johnson]'s counsel also stipulated to the report of Officer Natalie Murphy, who examined the ballistic evidence recovered from the scene of the shooting of [] Thomas and compared it to the evidence found in the 4200 Woodhaven Road apartment. Officer Murphy found that the two [] 9mm FCCs recovered by the Crime Scene Unit from 801 North 10th Street originated from the 9mm handgun found in 4200 Woodhaven Road apartment. Officer Murphy further found that the eight [] .45 caliber FCCs found at the scene of the shooting originated from the same unidentified firearm. Finally, Officer Murphy found that each piece of ballistic evidence recovered from [] Thomas'[] body during his autopsy - two [] bullet jackets and one [] .45 caliber bullet - also originated from the same unidentified firearm.

The Commonwealth and [Johnson]'s counsel further stipulated to the report of Jean Hess, a forensic scientist who compared DNA samples recovered from the handgun, magazine and live cartridges to samples retrieved from [Johnson], his codefendant Yaasim Smith, and [Thomas]. In her report, Jean Hess concluded that the DNA from the handgun was consistent as having originated from at least one [] male contributor and excluded [] Thomas as a contributor to that sample. However, the DNA analysis proved inconclusive regarding the origin of the DNA sample in relation to [Johnson] or Yaasim Smith due to insufficient data. Lastly, the Commonwealth and [Johnson]'s counsel stipulated that [Johnson] did not have a valid license to carry a firearm in the state of Pennsylvania.

[Johnson] was subsequently charged with [the above-listed crimes]. …

On May 30, 2023 [Johnson], after an extensive oral and written colloquy, waived his right to a jury trial. Thereafter, a waiver trial commenced before this Court which was bifurcated between May 31, 2023 and June 1, 2023. At the conclusion of [Johnson]'s waiver trial and after hearing all evidence and arguments from counsel, th[e trial c]ourt found [Johnson] guilty of [the above crimes] in relation to the shooting of [] Thomas.

Th[e trial c]ourt subsequently held a sentencing hearing for [Johnson] on March 21, 2024. At the hearing, and prior to th[e trial c]ourt's sentencing, [Johnson pled] guilty to an open VUFA

charge on docket number CP-51-CR-0008503-2021 in exchange for a recommended sentence of eleven and a half [] to twenty-three [] years of confinement. Subsequently, after considering the sentencing guidelines, the presentence investigation and mental health reports, the victim impact statements, the arguments from counsel, the facts and circumstances of the case, and [Johnson]'s own remarks, this Court sentenced [Johnson] to an aggregate of twenty [] to forty [] years of confinement for the [m]urder and related charges on docket number CP-51-CR-0008503-2021. As part of this negotiated plea deal, [Johnson]'s sentence for the open VUFA matter would run concurrent to his sentence for the murder and related charges.

On March 27, 2024, [Johnson], through his trial counsel, filed post-sentence motions requesting a vacation of sentence and a new trial which th[e trial c]ourt denied on April 3, 2024. On April 9, 2024, [Johnson] filed a notice of appeal to the Superior Court of Pennsylvania. On April 11, 2024, th[e trial c]ourt directed [Johnson] to file a 1925(b) statement of errors complained of on appeal. On April 12, 2024, [Attorney] Mosser entered his appearance as [Johnson]'s appellate counsel. On July 1, 2024, in lieu of filing a 1925(b) [s]tatement of [m]atters [c]omplained of on [a]ppeal, [Attorney Mosser] filed a notice of intent to file an **_Anders_**[] brief …. In his notice, [Attorney Mosser] stated that he had reviewed the record and determined that there were no arguable issues of merit to be advanced on direct appeal.

On August 16, 2024, the Superior Court of Pennsylvania remanded the case for a determination as to whether appellate counsel had abandoned [Johnson].[2] Th[e trial c]ourt held a hearing to determine the status of appellate counsel on September 12, 2024[,] and confirmed that [Attorney] Mosser would remain as appellate counsel. On January 27, 2025 and February 3, 202[5], [Johnson] wrote two [] pro se motions — neither of which were filed with or received by this Court — with the Superior Court of Pennsylvania, requesting an official inquiry and appointment of replacement appellate counsel. On February 26, 2025, the Superior Court once more directed th[e trial c]ourt to hold a hearing to determine whether [Attorney] Mosser had

_____

[2] This Court entered the Order after Attorney Mosser failed to file a timely docketing statement on Johnson's behalf. **_See_** Order, 8/16/2024 (per curiam).

> abandoned [Johnson]. Subsequently, th[e trial c]ourt held a hearing on March 19, 2025, and confirmed, once more, that [Attorney] Mosser had not abandoned [Johnson], referencing [Attorney] Mosser's July 1, 2024 notice of intent to file an **Anders**[] brief ….

Trial Court Opinion, 4/10/2025, at 1-6 (citations and some capitalization omitted, footnote added).

On August 26, 2025, Attorney Mosser filed an **Anders** brief and petition to withdraw as counsel. Notably, in his petition to withdraw, Attorney Mosser stated that he provided a copy of the petition to withdraw and **Anders** brief to Johnson, and informed Johnson that "he has the immediate right to proceed either pro se or with retained counsel." Petition to Withdraw, 8/26/2025, at 2; **see also Commonwealth v. Harden**, 103 A.3d 107, 110 (Pa. Super. 2014) ("Counsel also must provide a copy of the **Anders** brief to the appellant" as well as a letter that advises the client of the following rights: "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the **Anders** brief") (citation omitted). However, Attorney Mosser failed to attach any correspondence to Johnson informing him of these rights. As a result, on October 7, 2025, this Court entered a per curiam Order directing Attorney Mosser to provide the letter advising Johnson of his rights within seven days. Order, 10/7/2025 (per curiam). Attorney Mosser did not comply. On October 20, 2025, this Court entered another Order directing Attorney Mosser to comply with the October

7, 2025 order within five days. Order, 10/202/2025 (per curiam). Attorney Mosser again did not comply.

On November 18, 2025, Johnson pro se filed a motion to vacate the appointment of counsel and appoint new counsel and/or remand for assessment of Attorney Mosser. In this motion, Johnson admitted that he had received the **Anders** brief and petition to withdraw, but stated that Attorney Mosser failed to inform him about his appellate rights pursuant to **Anders**. On December 5, 2025, this Court entered another Order, wherein we advised Johnson of his right to retain new counsel for appeal, proceed pro se, or raise any additional arguments Johnson deems worthy of our attention. Order, 12/5/2025 (per curiam). This Court also provided Johnson thirty days to respond to Attorney Mosser's petition to withdraw and **Anders** brief, either pro se or with retained counsel. Johnson did not file a response.

When faced with an **Anders** brief and petition to withdraw as counsel, we may not review the merits of the underlying issues or allow withdrawal without first deciding whether counsel has complied with all requirements set forth in **Anders** and **Santiago**. **Commonwealth v. Orellana**, 86 A.3d 877, 879 (Pa. Super. 2014). We do not review the merits of the underlying issues or permit counsel to withdraw without first assessing whether counsel has complied with the technical requirements attending the withdrawal process. **Commonwealth v. Tejada**, 176 A.3d 355, 359 (Pa. Super. 2017). We have summarized these requirements as follows:

Direct appeal counsel seeking to withdraw under **Anders** must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an **Anders** brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof.

**Anders** counsel must also provide a copy of the **Anders** petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed pro se or raise any additional points worthy of this Court's attention.

If counsel does not fulfill the aforesaid technical requirements of **Anders**, this Court will deny the petition to withdraw and remand the case with appropriate instructions (e.g., directing counsel either to comply with **Anders** or file an advocate's brief on [a]ppellant's behalf).

**Commonwealth v. Woods**, 939 A.2d 896, 898 (Pa. Super. 2007) (citations omitted).

Additionally, there are substantive requirements governing the content of the **Anders** brief:

[I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Commonwealth v. Falcey**, 310 A.3d 313, 315 (Pa. Super. 2024) (quoting **Santiago**, 978 A.2d at 361).

If counsel has substantially complied with the above requirements, it is then this Court's duty to conduct its own review of the record to determine

- 7 -

whether there are any other nonfrivolous issues that Johnson could raise on appeal. ***Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa. Super. 2018) (en banc).

The record reflects that Attorney Mosser filed a petition with this Court stating that after reviewing the record, he finds this appeal to be frivolous. Petition to Withdraw as Counsel, 8/26/2025. In conformance with ***Santiago***, Attorney Mosser's brief includes summaries of the facts and procedural history of the case. ***See Anders*** Brief at 6-8. Additionally, Attorney Mosser explains how "there are no nonfrivolous issues that can be raised," and includes discussion of, and citation to, relevant authority in support of his conclusion. ***Id.*** at 10-18. Johnson admitted that he had a copy of Attorney Mosser's petition to withdraw representation and the ***Anders*** brief. Motion to Vacate, 11/18/2025, at 2 (unnumbered). As noted above, however, it appears Attorney Mosser failed to send Johnson the required letter advising him of his rights to proceed pro se or with private counsel, and to raise any additional issues that he deems worthy of this Court's consideration. Nonetheless, as Johnson received the information regarding his appellate rights from this Court, ***see*** Order, 12/5/2025, we proceed to review the merits of the claims raised.

Attorney Mosser raised four claims in the ***Anders*** brief: (1) the evidence was insufficient to support Johnson's convictions; (2) a challenge to the weight of the evidence; (3) a challenge to the discretionary aspects of sentencing;

and (4) a claim related to Johnson's pretrial attempt to remove trial counsel.

***Anders*** Brief at 7-19.

## Sufficiency of the Evidence

Johnson contends that the evidence was insufficient to support his convictions. ***Id.*** at 7-13. This Court assesses sufficiency claims according to the following standard:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is de novo and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the [factfinder] to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the [factfinder].

***Commonwealth v. Scott***, 325 A.3d 844, 849 (Pa. Super. 2024) (citation omitted).

The record established that Detective Campbell investigated Thomas' murder and stated that he recovered surveillance video that showed the shooting, noting the assailants all had masks covering their faces. N.T., 5/31/2023, at 7-8, 17; ***see also id.*** at 102-10 & Ex. 88 (Detective Thorsten Lucke testified that he analyzed and processed video from various sources as part of the investigation and the Commonwealth introduced a video

compilation of surveillance footage). He indicated that the video showed a Toyota Camry with distinctive rims. *Id.* at 8. After disseminating a patrol alert for the Camry, he received a report that it had been located on Cadwallader Street and Detective Campbell recovered video from that location. *Id.* at 9-10. This video showed the car park on the street and three individuals exit the vehicle. *Id.* at 10-11. Detective Campbell tracked the individuals through other video footage and found they ended up at the Fishtown Flats, an apartment complex on Germantown Avenue. *Id.* at 11. Through further video footage, he ascertained the three individuals entered an apartment belonging to the father of codefendant, Yaasim Smith. *Id.* at 13. The footage also showed Johnson's face. *Id.* at 18. After creating a patrol alert of Johnson's face, Officer Neal identified him. *Id.* at 20-21, 24, 25-26. Thereafter, an arrest warrant was issued for Johnson. *Id.* at 21. The police arrested Johnson at an apartment on Woodhaven Road. *Id.*

Officer Neal testified that he knew Johnson from encountering him in the neighborhood and on social media, and so informed Detective Campbell when he sent the alert. *Id.* at 57-61, 62, 72, 91-92. Officer Neal indicated Johnson was wearing a sweatshirt with a "NR" logo, which referenced a rap group named "No Regrets" to which Johnson belonged. *Id.* at 61, 75-77. He also knew that Johnson and Taylor were involved in a long-term conflict. *Id.* at 63.

Officer Hilbert testified that she and other officers executed the search warrant for Johnson's apartment on Woodhaven Road. *Id.* at 96. She stated that the officers recovered a Glock 19 handgun, loaded with one live 9mm cartridge and fifteen live cartridges in the magazine, and a box of .45 caliber ammunition. *Id.* at 97-98.

The parties additionally stipulated to the admission of certain evidence. First, the parties agreed that Taylor died from multiple gunshot wounds. *Id.* at 49. Further, ballistics evidence indicated a .45 caliber bullet was used to kill Taylor. *Id.* at 50, 119. They also stipulated that police arrested Johnson at the Woodhaven Road apartment building, hiding in a closet in the main room of the apartment. *Id.* at 116. In addition, two fired cartridge casings found at the scene of the shooting were fired from the handgun recovered from the Woodhaven Road apartment. *Id.* at 117-18; *see also id.* at 118 (noting that eight of the cartridges recovered from the scene were fired from an unidentified firearm). The parties added that DNA testing of the firearm was inconclusive. *Id.* at 120-21. Finally, the parties stipulated that Johnson did not have a license to carry a firearm. *Id.* at 121.

<u>Third-Degree Murder and Conspiracy</u>

To sustain a conviction of third-degree murder, the Commonwealth must establish "(1) an intentional act, (2) done with malice, that (3) results in an unintentional killing." *Commonwealth v. Arrington*, 247 A.3d 456, 461 (Pa. Super. 2021); *see also* 18 Pa.C.S. § 2502(c). "Malice includes not

- 11 -

only particular ill will toward the victim, but also wickedness of disposition, hardness of heart, wantonness, and cruelty, recklessness of consequences, and conscious disregard by the defendant of an unjustified and extremely high risk that his actions may cause serious bodily harm." ***Commonwealth v. Jones***, 271 A.3d 452, 458 (Pa. Super. 2021).

Criminal conspiracy requires the Commonwealth to prove "the defendant: (1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." ***Commonwealth v. Wellman***, 344 A.3d 13, 19 (Pa. Super. 2025) (citation omitted); ***see also*** 18 Pa.C.S. § 903(a). "[A] conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation." ***Commonwealth v. Johnson***, 180 A.3d 474, 479 (Pa. Super. 2018); ***see also Wellman***, 344 A.3d at 19 ("It is essential that the co-conspirators have a shared criminal intent.").[3]

Viewing the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth as verdict winner, the record sufficiently supports the finding that Johnson was one of the actors at the

---

[3] Conspiracy to commit third-degree murder is a cognizable offense in Pennsylvania. ***See Commonwealth v. Fisher***, 80 A.3d 1186, 1196 n.6 (Pa. 2013); ***accord Wellman***, 344 A.3d at 24.

scene and that he participated in the murder. Further, the video footage established Johnson worked in tandem with two other men in a Toyota Camry in shooting and killing Thomas, and police found one of the guns used in the shooting in Johnson's apartment, where Johnson was also hiding when he was arrested.

Although there was no evidence of a formal agreement between the three men, their conduct, including shooting at Thomas and arriving at and fleeing from the scene together to an apartment building, linked Johnson to the conspiracy to kill Thomas. *See Commonwealth v. Johnson*, 719 A.2d 778, 785 (Pa. Super. 1998) ("The conduct of the parties and the circumstances surrounding their conduct may create 'a web of evidence' linking the accused to the alleged conspiracy beyond a reasonable doubt."); *see also Commonwealth v. Jordan*, 212 A.3d 91, 98 (Pa. Super. 2019) (finding a conspiracy may be inferred where the defendant was with the shooter shortly before and shortly after the shooting). Additionally, by participating in the shooting, Johnson committed an overt act in furtherance of the group's goal to kill Thomas. Although it is unclear whether Johnson fired the fatal shot, the "overt act need not be committed by the defendant; it need only be committed by a coconspirator." *Commonwealth v. Melvin*, 103 A.3d 1, 42 (Pa. Super. 2014) (citation omitted). Where the defendant's actions shows an intent to cause the death, "the evidence supports the charge

of conspiracy to commit third[-]degree murder." ***Fisher***, 80 A.3d at 1195. Therefore, the evidence is sufficient to support the conspiracy conviction.

Because the evidence was sufficient to support his conviction of conspiracy to commit third-degree murder, the evidence was also necessarily sufficient to support Johnson's third-degree murder conviction. ***See Commonwealth v. Chambers***, 188 A.3d 400, 410 (Pa. 2018) ("Once the conspiracy is established beyond a reasonable doubt, a conspirator can be convicted of both the conspiracy and the substantive offense that served as the illicit objective of the conspiracy."); ***see also Commonwealth v. Lambert***, 795 A.2d 1010, 1016 (Pa. Super. 2002) (stating that a conspirator is criminally liable for the actions of his co-conspirators even if he did not act as a principal in committing the underlying crimes).

<u>PIC and Firearms Offenses</u>

PIC requires the Commonwealth to prove two elements: "(1) possession of an object that is an instrument of crime and (2) intent to use the object for a criminal purpose." ***Commonwealth v. Brockington***, 230 A.3d 1209, 1213 (Pa. Super. 2020) (citation omitted); ***see also*** 18 Pa.C.S. § 907(a). "The actor's criminal purpose … provides the touchstone of his liability for the PIC offense, and such purpose may be inferred from the circumstances surrounding the possession." ***Brockington***, 230 A.3d at 1213.

The crime of firearms not to be carried without a license is defined, in pertinent part, as

any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S. § 6106(a)(1).

Further, under section 6108, "[n]o person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless[ ] such person is licensed to carry a firearm[, or] such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license)." *Id.* § 6108.[4]

"Possession can be found by actual possession or constructive possession." *Commonwealth v. McIntyre*, 333 A.3d 417, 432 (Pa. Super.

_____

[4] Recently, this Court held in *Commonwealth v. Sumpter* that section 6108 was "unconstitutional on an equal protection basis" as applied to Sumpter because "persons within the City of Philadelphia [were placed] at a special disadvantage in the exercise of their Second Amendment right." *Commonwealth v. Sumpter*, 340 A.3d 977, 988 (Pa. Super. 2025). However, Johnson did not raise this issue before the trial court, waiving the claim. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); *see also Commonwealth v. Spone*, 305 A.3d 602, 609 (Pa. Super. 2023) ("Even issues of constitutional dimension cannot be raised for the first time on appeal.") (citation omitted). We therefore do not remand for the filing of a merits brief on this issue as it would necessarily be frivolous. *See Commonwealth v. Cook*, 175 A.3d 345, 350 (Pa. Super. 2017) (finding that waived issues raised on appeal are frivolous); *see also Commonwealth v. Cox*, 231 A.3d 1011, 1016 (Pa. Super. 2020) (explaining that precedent does not permit "this Court to address issues that were not properly preserved in the trial court" and "the mere filing of an *Anders* brief and petition to withdraw will not serve to resuscitate claims that were already waived upon the filing of the notice of appeal").

2025) (citation omitted). "When there is no direct evidence the person was in physical possession of the firearm, the Commonwealth must prove the element of possession through what has been described as the 'legal fiction' of constructive possession." *Id.* (citation omitted). "[A] defendant has constructive possession of contraband if he has conscious dominion of it, that is, he has the power to control the contraband and the intent to exercise that control." *Id.* (citation and quotation marks omitted). "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not[] and may be established by the totality of the circumstances." *Id.* (citations and quotation marks omitted).

The evidence, viewed in a light most favorable to the Commonwealth, established that Johnson constructively possessed the .9-millimeter firearm that he used the firearm on the streets of Philadelphia during the shooting of Thomas, and that he did not have a license to carry a firearm. Police found the gun in Johnson's home, and forensic testing determined that the gun was used in the shooting. Thus, the totality of the circumstances established Johnson's possession of the firearm. *See id.* Further, the evidence established Johnson, while in possession of the gun, used it criminally. Accordingly, the evidence was sufficient to support the firearms and PIC convictions.

Based on the foregoing, Johnson's first claim is frivolous.

**Weight of the Evidence**

Next, Johnson argues that the verdicts were against the weight of the

evidence based on inconsistencies in the Commonwealth's witness testimony.

*Anders* Brief at 14-15.

Our standard of review of a weight of the evidence challenge is as

follows:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. To successfully challenge the weight of the evidence, a defendant must prove the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa. Super. 2017)

(cleaned up).

The trial court rejected Johnson's weight claim, finding the following:

> As the finder of fact in [Johnson]'s case, it was the function of th[e trial c]ourt to evaluate the evidence and determine the weight it should be given. The Commonwealth presented five []witnesses and entered into several stipulations with opposing

counsel as part of its case-in-chief against [Johnson] and his co-defendant, Yaasim Smith. Th[e trial c]ourt weighed this testimony, the stipulations among counsel, and evidence in such a manner as to find [Johnson] guilty of [the above charges] in relation to his role in the murder of Zykeem Thomas. … After a review of the testimony and evidence presented at trial, th[e trial c]ourt denied [Johnson]'s post-sentence motions without a hearing.

In denying [Johnson]'s post-sentence motions, th[e trial c]ourt properly concluded that the [] verdict did not shock the judicial conscience and was adequately supported by the weight of the evidence. As th[e trial c]ourt has explained and [Johnson] now concedes in challenging the weight of the evidence, there was sufficient evidence for the [trial court] to convict [Johnson] of [the] offenses. Furthermore, despite [Johnson]'s contentions otherwise, the Commonwealth presented corroborative testimony and evidence supporting [Johnson]'s guilt. Accordingly, the testimony and evidence presented at trial was not so "tenuous, vague and uncertain" such that the [] verdict shocked the conscience of th[e trial c]ourt.

* * *

[T]he Commonwealth presented evidence which demonstrated the accuracy of the testimony of Detective Campbell, Officer Neal, and Detective Lucke, and presented additional ballistic evidence further linking [Johnson] to the crime. The cumulative evidence presented indicated that [Johnson] was involved in the murder of [] Thomas. The Commonwealth thus presented compelling testimony and evidence supporting [Johnson]'s guilt, such that th[e trial c]ourt's verdict finding [Johnson] guilty of murder of the third degree and related charges was adequately supported by the weight of the evidence.

Trial Court Opinion, 4/10/2025, at 20, 22 (unnecessary capitalization omitted).

We conclude that the trial court did not abuse its discretion in rejecting Johnson's challenge to the weight of the evidence. Pointedly, our review of the record reflects no inconsistencies in the testimony of the Commonwealth's

witnesses, nor did Johnson identify any before the trial court or on appeal. It is not for this Court to reweigh the evidence in Johnson's favor, as it is the trial court, as factfinder, who serves as the arbiter of credibility, and is free to believe or disregard any part of a witness' testimony. *See Commonwealth v. Clemons*, 200 A.3d 441, 464 (Pa. 2019). Here, the trial court considered the evidence presented at trial and rendered the guilty verdicts, which it found was supported by the evidence presented. This conclusion finds ample record support, as the evidence established Johnson participated in a conspiracy to shoot and kill Thomas. *See Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013) (stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact") (citation omitted). We therefore find no abuse of discretion in the trial court's denial of Johnson's weight challenge. *See Commonwealth v. Gilliam*, 249 A.3d 257, 270 (Pa. Super. 2021) (concluding that the trial court did not abuse its discretion in denying appellant's weight of the evidence challenge where doing so would require this Court to assume the role of factfinder and reweigh the evidence in his favor). Thus, this claim is frivolous.

### Discretionary Aspects of Sentencing

Next, Johnson argues that his sentence was excessive. *Anders* Brief at 15. This presents a challenge to the discretionary aspects of his sentence. *See Commonwealth v. Lee*, 876 A.2d 408, 411 (Pa. Super. 2005) ("a claim

that the sentence imposed by the trial court was manifestly excessive is a challenge to the discretionary aspects of the sentence") (citation omitted).

There is "no absolute right to appeal when challenging the discretionary aspect of a sentence." ***Commonwealth v. Crump***, 955 A.2d 1280, 1282 (Pa. Super. 2010). To invoke this Court's jurisdiction, Johnson must satisfy the following four-part test:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post-sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of her appeal pursuant to Pa.R.A.P. 2119(f); (4) the appellant raise a substantial question for our review.

***Commonwealth v. Rivera***, 312 A.3d 366, 376-77 (Pa. Super. 2024) (citation and brackets omitted).

A substantial question is determined on a case-by-case basis and exists "only when the appellant advances a colorable argument that the sentencing judge's actions were wither: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms with underly the sentencing process." ***Commonwealth v. McCain***, 176 A.3d 236, 240 (Pa. Super. 2017). A "substantial question determination does not require the court to decide the merit of whether the sentence is clearly unreasonable." ***Commonwealth v. Dodge***, 77 A.3d 1263, 1270 (Pa. Super. 2013).

The record reflects that Johnson filed a timely appeal and post-sentence motion. Attorney Mosser did not, however, include a 2119(f) statement in his ***Anders*** brief. The Commonwealth did not object to this omission; therefore,

we may ignore the omission. *See Commonwealth v. Kiesel*, 854 A.2d 530, 533 (Pa. Super. 2004). Moreover, as this argument is presented in an *Anders* brief, we overlook the absence of the Rule 2119(f) statement on that basis as well. *See Commonwealth v. Zeigler*, 112 A.3d 656, 661 (Pa. Super. 2015) ("Where counsel files an *Anders* brief, this Court has reviewed the matter even absent a separate Pa.R.A.P. 2119(f) statement."). "However, a bald assertion that a sentence is excessive does not by itself raise a substantial question justifying this Court's review of the merits of the underlying claim." *Commonwealth v. Fisher*, 47 A.3d 155, 159 (Pa. Super. 2012).

Despite this defect, we will address Johnson's claim to determine whether it is wholly frivolous. *See Commonwealth v. Lilley*, 978 A.2d 995, 998 (Pa. Super. 2009) (stating that where counsel files an *Anders* brief, this Court will review discretionary sentencing claim despite the failure to raise a substantial question to determine whether counsel is entitled to withdraw). Our standard of review is well established:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. Appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Devine*, 326 A.3d 935, 939 (Pa. Super. 2024) (citations omitted). In addition to the abuse of discretion standard, our review is confined by section 9781(c) and (d) of the Sentencing Code:

**(c) Determination on appeal.--**The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

**(d) Review of record.--**In reviewing the record the appellate court shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(c), (d).

If the trial court was informed by a presentence investigation report, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion

should not be disturbed."[5]  *Commonwealth v. Miller*, 275 A.3d 530, 535 (Pa. Super. 2022); *see also Commonwealth v. Rhoades*, 8 A.3d 912, 919 (Pa. Super. 2010) (noting that where "the sentencing court had the benefit of a pre[]sentence investigation report, we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors") (citation and quotation marks omitted).

The record reflects that the trial court considered the presentence investigation report, mental health reports, and the sentencing guidelines. N.T., 3/21/2024, at 11, 13-15, 44; *see also id.* at 14 (noting the standard range for third-degree murder and criminal conspiracy was ninety months to the statutory limit, plus or minus twelve months).  The trial court heard the victim impact testimony and from Johnson.  *Id.* at 35-30, 41-43, 44.  The trial court also expressly considered the protection of the public, the gravity of the offenses, and Johnson's background.  *Id.* at 18, 44, 46.  Thereafter, the trial court imposed the aggregate sentence of twenty to forty years in prison, which is within the sentencing guidelines.  *Id.* at 46-47.

_____

[5] The sentencing factors include "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."  42 Pa.C.S. § 9721(b).  "The balancing of these [s]ection 9721(b) sentencing factors is within the sole province of the sentencing court." *Commonwealth v. Baker*, 311 A.3d 12, 19 (citation omitted).

- 23 -

We conclude that the trial court did not abuse its discretion in its sentencing decision. The trial court both expressly (on the record) and implicitly (through its review of the presentence investigation report) considered all appropriate sentencing factors, including Johnson's character and mitigating evidence. Further, where, as here, the sentence is within the standard range of the guidelines, "Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010). Based upon our review of the record and the relevant law, there is no basis to overturn the trial court's sentencing decision. *See* 42 Pa.C.S. § 9781(c), (d). Therefore, we conclude Johnson's sentencing claim is frivolous.

## Motion to Remove Counsel

Finally, Johnson contends that the trial court erred by denying his pro se motion to remove counsel prior to trial, which he contends should have been granted because of irreconcilable differences. *Anders* Brief at 18. The law is clear, however, that

> the right to appointed counsel does not include the right to counsel of the defendant's choice. Moreover, [w]hether to grant a defendant's petition to replace court appointed counsel is a decision which is left to the sound discretion of the trial court. As a general rule, however, a defendant must show irreconcilable differences between himself and his court appointed counsel before a trial court will be reversed for abuse of discretion in refusing to appoint new counsel.

*Commonwealth v. Floyd*, 937 A.2d 494, 497 (Pa. Super. 2007) (citations, quotation marks, and paragraph break omitted); *see also* Pa.R.Crim.P.

122(C) ("A motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons.").

The record shows that prior to trial, Johnson filed a pro se motion to remove trial counsel and appoint new counsel. Motion to Remove Counsel, 7/8/2022, at 1-3. Johnson averred that counsel had failed to keep him "abreast of important matters and/or follow up or investigate matters involving defense/strategy." *Id.* at 2. On May 30, 2023, however, during Johnson's colloquy waiving his right to a jury trial, the following exchange occurred:

> THE COURT: Have you fully discussed your case with [trial counsel]?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you tell him everything he should know about this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you fully discuss your decision to have a waiver trial instead of a jury trial like we started earlier today?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And are you satisfied with his representation?
>
> THE DEFENDANT: Yes.

N.T., 3/30/2023, at 6-7.

The trial court found "that the record is devoid of any grounds" to support a finding of irreconcilable differences. Trial Court Opinion, 4/10/2025,

at 28.  Based on our review of the record, we agree and conclude this claim is frivolous.  *See Floyd*, 937 A.2d at 500.

### Conclusion

Our independent review of the record reveals no nonfrivolous issues that Johnson could raise on appeal.  *See Dempster*, 187 A.3d at 272.  We therefore grant Attorney Mosser's petition to withdraw and affirm the judgment of sentence.

Although we grant the petition to withdraw, we cannot overlook the repeated interventions by this Court, necessitated by Attorney Mosser's repeated failures to comply with this Court's orders.  Twice this Court was required to remand the matter to ensure he did not abandon Johnson on appeal.  And more significantly, Attorney Mosser failed entirely to respond to two separate orders directing him to send the legally required letter to Johnson regarding his appellate rights in the face of an *Anders* brief and petition to withdraw representation.  *See* Order, 10/20/2025 (per curiam); Order, 10/7/2025 (per curiam).  But for this Court informing Johnson of his appellate rights in this matter, this case would be even more drawn out than it already was (resulting from Attorney Mosser's inaction), requiring that we remand the matter for the appointment of new counsel to properly advise Johnson.

It is unquestionably the role of this Court "[a]t any time, upon its own motion or upon application, [to] issue any appropriate order requiring obedience to or otherwise enforcing its judgment or other order."  Pa.R.A.P.

2591(b). Attorney Mosser's repeated failures to respond to this Court's orders is "both irresponsible and troubling" and antithetical to "the administration of justice." **Commonwealth v. Frazier**, 330 A.3d 822, 824 (Pa. Super. 2024). Attorney Mosser was court-appointed by the trial court to represent Johnson before this Court. Based upon his conduct throughout this appeal, and, in particular, his abdication of his duty not only to comply with this Court's orders, but to inform his client of his rights, we direct the trial court to withhold attorneys' fees which would be paid and/or to recover those fees already paid to Attorney Mosser in connection with this appeal. **See Commonwealth v. Foster**, 560 A.2d 800, 802 (Pa. Super. 1989) (allowing counsel to withdraw, but directing the lower court to withhold any fees owed to counsel in connection with his appointment in that case because of counsel's "failure to comply with our explicit directives"); **see also Commonwealth v. McDaniels**, 785 A.2d 120, 122 (Pa. Super. 2001) (directing the trial court to "withhold any fees which would normally be paid for this appeal").

Petition to withdraw granted, with instructions. Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/13/2026

- 27 -